IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 18-cv-02194-CMA-KLM

CHAD SELLS,

    Plaintiff,

v.

UPPER PINE RIVER FIRE PROTECTION DISTRICT, and
BRUCE EVANS, in his official and individual capacities,

    Defendants.

## ORDER RE: MOTION FOR SUMMARY JUDGMENT

This is a 42 U.S.C. § 1983 case involving alleged violations of the Plaintiff's First Amendment rights. Plaintiff claims that he was fired from his job as a firefighter after he organized a meeting with his coworkers to discuss safety concerns. He is suing the fire department and the fire chief, alleging that his firing violated his right to freedom of speech and association.

Defendants now move for summary judgment on all of Plaintiff's claims (Doc. # 57). For the following reasons, Defendant's Motion is granted.

### I.    BACKGROUND

Plaintiff is a firefighter and emergency medical technician (EMT). (Doc. # 26, ¶ 16). From 2015 to 2017, he worked at the Upper Pine River Fire Protection District ("Department"), a fire department in southwest Colorado. (Doc. # 26, ¶¶ 1-2, 10).

According to Plaintiff, he consistently received positive review from his superiors, and he expected to someday be promoted to the rank of Captain. (Doc. # 26, ¶¶ 24-289).

In July 2017, however, Plaintiff organized a meeting of the Department's firefighters. (Doc. # 26, ¶ 4). Captains and chiefs were excluded from the meeting, though one deputy chief was allowed to attend. (Doc. # 26, ¶ 4). According to Plaintiff, the purpose of the meeting was to address "workplace safety concerns, public safety concerns, and the general mismanagement, disorganization, and dysfunction of the Upper Pine Fire Department." (Doc. # 26, ¶ 4). The fire chief later described it as "a bitch session." (Doc. # 57-1, p. 47). The meeting took place on July 16, 2017. (Doc. # 26, ¶ 77). Two days later, Plaintiff was fired. (Doc. # 26, ¶¶ 86-89).

Plaintiff now contends that he was fired in retaliation for organizing the July 16 meeting. He is suing the Department and its fire chief, Bruce Evans, alleging that his termination violated his First Amendment right to freedom of speech and freedom to associate. (Doc. # 26, ¶¶ 106-23). Plaintiff also argues that his firing amounts to an illegal "prior restraint" on speech because it prevented him from engaging in similar conduct in the future. (Doc. # 26, ¶¶ 124-32).

Defendants now move for summary judgment. (Doc. # 57). They do not dispute that Plaintiff was fired for his role in the July 16 meeting. (Doc. # 57, p. 9). They argue, however, that Plaintiff's termination was legal and consistent with the First Amendment. (Doc. # 57, p. 9). They also contend that Evans is immune from suit under the doctrine of qualified immunity. (Doc. # 57, p. 10).

## II.  LEGAL STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact and entitlement to judgment as a matter of law. *Id.* Once the movant has met its initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

## III.  APPLICATION

As an initial matter, the Court notes that Plaintiff has abandoned some of the claims and allegations asserted in his Complaint. Plaintiff's Complaint asserted a total of six causes of action: (1) wrongful discharge; (2) retaliation in violation of the First Amendment freedom of speech; (3) retaliation in violation of the First Amendment freedom to associate; (4) violation of the First Amendment prohibition on prior restraints; (5) violation of Title VII of the Civil Rights Act of 1964; and (6) violation of the Colorado Anti-Discrimination Act ("CADA"). (Doc. # 26). Defendant moved for summary judgment on all six claims. (Doc. # 58).

Plaintiff now states that he does not oppose summary judgment on Claims 5 and 6. (Doc. # 58, p. 1, n. 1). Therefore, the Court grants Defendant's Motion for Summary Judgment with respect to Claims 5 and 6 (Title VII and CADA claims).

Plaintiff also concedes that Defendants are entitled to summary judgment on the wrongful discharge claim against the Department (Claim 1). (Doc. # 58, p. 20). Although

Plaintiff implies that he intends to continue pursuing a wrongful discharge claim against Evans, (*See* Doc. # 58, p. 20 ("Plaintiff sufficiently pled that Evans's actions were wanton and willful.")), Plaintiff has not pled any such claim. (*See* Doc. # 26, p. 13 (asserting a wrongful discharge claim "Against Defendant Upper Pine River Fire Protection District," but not against Bruce Evans)). Plaintiff cites no authority to suggest he can pursue a claim he has not pled. Therefore, the Court grants Defendant's Motion for Summary Judgment with respect to Claim 1.

Plaintiff now has three claims remaining, all of which assert First Amendment violations: Claim 2 ("Retaliation for Exercising Right to Free Speech"), Claim 3 ("Retaliation for Exercising Right of Freedom to Associate"), and Claim 4 ("Illegal Prior Restraint on Freedom of Speech and of Association"). Defendants seek summary judgment on all three of these claims.

**A.    RETALIATION (CLAIMS 2 AND 3)**

Plaintiff contends that he was fired in retaliation for engaging in activity that was protected by the First Amendment – namely, organizing and participating in the July 16 meeting. Defendants argue that Plaintiff has not demonstrated that he engaged in any protected activity, and that Plaintiff's retaliation claims therefore fail as a matter of law. The Court agrees with Defendant.

"When a citizen enters government service, the citizen by necessity must accept certain limitations on his or her freedom. Government employers, like private employers, need a significant degree of control over their employees' words and actions; without it, there would be little chance for the efficient provision of public services." *Merrifield v.*

*Bd. of Cty. Comm'rs*, 654 F.3d 1073, 1079 (10th Cir. 2011). Therefore, a public employee claiming retaliation for First Amendment activity bears the initial burden of proving that his conduct was protected by the First Amendment. The plaintiff must show that (1) his First Amendment activity involved a matter of public concern; (2) his interest in the protected activity outweighed the employer's interest in regulating it; and (3) the protected activity was a substantial motivating factor in the employer's decision to take adverse action against him. *Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 460–61 (10th Cir. 2013). "If the employee establishes these three factors, he wins unless . . . the employer establishes it would have taken the same action in the absence of the protected [activity]." *Id.* (internal quotations omitted).

Defendants argue that Plaintiff's retaliation claims fail at the first element because Plaintiff has failed to demonstrate that the July 16 meeting involved matters of public concern. (Doc. # 57, p. 2). The Court agrees.

Whether speech involves a "matter of public concern" is a question of law for the court to decide. *Rich v. Bent Cnty.*, 122 F. Supp. 2d 1175, 1179 (D. Colo. 2000). Not every statement or criticism by a public employee amounts to a "matter of public concern." "To presume that all matters which transpire within a government office are of public concern would mean that virtually every remark—and certainly every criticism directed at a public official—would plant the seed of a constitutional case." *Connick v. Myers*, 461 U.S. 138, 149 (1983). "[T]he First Amendment does not require a public office to be run as a roundtable for employee complaints over internal office affairs." *Id.* Therefore, to determine whether speech pertains to a matter of public concern, "courts

5

focus on the motive of the speaker and attempt to determine whether the speech was calculated to redress personal grievances or whether it had a broader public purpose." *Gardetto v. Mason*, 100 F.3d 803, 812 (10th Cir. 1996).

"Speech that may be of general interest to the public is not automatically provided First Amendment protection." *Rich*, 122 F. Supp. 2d at 1179. Matters of public concern are "those of interest to the community, whether for social, political, or other reasons." *Lighton v. Univ. of Utah*, 209 F.3d 1213, 1224 (10th Cir.2000). "Conversely, speech that simply airs grievances of a purely personal nature typically does not involve matters of public concern." *Id.* (internal quotation omitted). "The pertinent inquiry is whether [the speaker] was speaking as an employee or as a citizen." *Rich*, 122 F. Supp. 2d at 1179. "[W]hen a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of public interest, no First Amendment protection is provided." *Connick*, 461 U.S. at 147.

Plaintiff has not provided any transcript of the July 16 meeting, any notes from the meeting, or any meeting minutes. Thus, there is little evidence as to what was discussed at the meeting. Plaintiff argues, however, that the meeting agenda shows that meeting "was, at least in part, related to matters of public concern." (Doc. # 58, p. 6). Specifically, Plaintiff argues that the meeting agenda[1] "contains at least five items that are directly, explicitly, and sometimes expressly related to matters of public concern," including "issues with Captains, breaks in the chain of command, lack of training, lack of standard operating procedures (SOP), and the single firefighter staffing of station 4."

---

[1] The agenda is attached to the Motion for Summary Judgement. (Doc. # 57-1, pp. 28-31).

(Doc. # 50, p. 12). This is not sufficient to demonstrate that Plaintiff's conduct involved matters public concern.

Assuming that the meeting agenda is, in fact, an accurate reflection of what was discussed at the July 16 meeting, Plaintiff has nevertheless failed to demonstrate that the meeting involved matters of public concern. Plaintiff completely fails to explain what "social, political, or other" interest the meeting held for the community. *Lighton*, 209 F.3d at 1224. Instead, he merely offers the conclusory statement that "these five [agenda] items are issues that directly affect public safety." (Doc. # 58, pp. 12-1). But how? A discussion is not of "public concern" merely because "its subject matter could in certain circumstances, be the topic of a communication to the public that might be of general interest." *Wilson v. City of Littleton*, Colo., 732 F.2d 765, 769 (10th Cir. 1984) (internal quotation omitted). "What is actually said on that topic must itself be of public concern." *Id.* Although it is conceivable that an agenda item labelled "lack of training"[2] *could* lead to discussion about public safety, Plaintiff offers no evidence to suggest that it *did* in this case. Likewise, while certain "issues with Captains" might be matters of public safety, others would plainly not be: if the "issue" is that the captain is not professionally competent, public safety is likely implicated; but if the "issue" is that the captain is sometimes rude, public safety concerns would probably not be part of the discussion. Plaintiff offer's no evidence to support his position that these agenda items led to discussion of matters of public concern. Therefore, Plaintiff has failed to demonstrate

---

[2] The Court notes, however, that despite Plaintiff's representation to the contrary, there is no agenda item titled "lack of training" on the meeting agenda in question. (*See* Doc. # 57-1, p. 29).

that what was "actually said" at the July 16 meeting involved matters of public concern. *Id.*

Plaintiff argues, however, that "Defendants' witnesses admit," in deposition testimony, "that these five items are issues that directly affect public safety," and thus constitute matters of public concern. (Doc. # 58, pp. 12-13). This statement is misleading. The witnesses in question did not "admit" that the July 16 meeting involved discussion of public safety issues. Rather, in response to hypothetical questions posed by Plaintiff's counsel, the witnesses admitted that things like "communication" and "training" can *sometimes* impact a fire department's ability to ensure public safety. For example, in the deposition of Bruce Evans, which Plaintiff cites in support of his argument, Evans testified that, although lack of training for firefighters can be a public safety issue, it was not an issue in the Department:

> Q: Do you believe that lack of communication in a fire department can cause public safety issues?
>
> A: Sure.
>
> …
>
> Q: Do you agree that the lack of training or unqualified individuals that are providing the instruction for training is a public safety issue?
>
> A: In our organization, no.

(Doc. # 58-1, p. 82).

Likewise, Mark Graham – another one of "Defendants' witnesses" whom Plaintiff cites in support of his argument – testified that things like lack of communication and lack of experience "could" affect public safety, but not that the July 16 meeting involved

8

discussion of public safety. (Doc. # 58-1, p. 164). None of the testimony Plaintiff cites suggests that "public safety" issues were discussed at the July 16 meeting.

Indeed, even Plaintiff, when he was asked at deposition "what was the point of the meeting," made no mention of "public safety":

> The point of the meeting was that because there was, you know, these issues and concerns, um, and because they were just randomly being talked about here and there, it was to make it all come together, to organize it so that there was some organization to this, and then it was being taken up in the appropriate way. It was not decisions we changed. It was not decisions we would make. We did make suggestions to certain things, but they were suggestions.

(Doc. # 58-1, pp. 123-24).

Thus, Plaintiff has failed to show that his conduct involved a matter of public concern, and his retaliation claims must fail as a matter of law.

## B.  PRIOR RESTRAINT (CLAIM 4)

Plaintiff next contends that his firing constituted an illegal "prior restraint" on his First Amendment rights. (Doc. # 26, ¶¶ 124-132). Specifically, Plaintiff claims that "Defendants terminated [Plaintiff] prior to his exercising his First Amendment rights to speak freely and associate as a private citizen about matters of public concern, in order to restrain his free speech and association before it occurred." (Doc. # 26, ¶ 126). Defendants argue that Plaintiff's prior-restraint claim must fail as a matter of law because Plaintiff has failed to offer any evidence that he was prevented from exercising his First Amendment rights. (Doc. # 57, pp. 13-14). Again, the Court agrees with Defendant.

A "prior restraint" is a law, regulation, or order that suppresses speech before it takes place. *Taylor v. Roswell Indep. Sch. Dist.*, 713 F.3d 25, 42 (10th Cir. 2013). "[U]nlike an adverse action taken in response to actual speech, [a prior restraint] chills potential speech before it happens." *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192, 1209 (10th Cir. 2007). "Prior restraints generally take one of two classic forms: judicial injunctions and administrative licensing schemes." *Taylor*, 713 F.3d at 42. To prove that his First Amendment rights were violated by a prior restraint, a plaintiff must generally prove that (1) he was required to apply to a decisionmaker for approval before engaging in the proposed speech; (2) the decisionmaker was empowered to determine whether the applicant should be granted permission to engage in the proposed speech; (3) approval of the application required action by the decisionmaker; and (4) approval is not a matter of routine, but involves the exercise of judgment on a case-by-case basis. *Berger v. City and Cnty. of Denver*, 2019 WL 2450955 (D. Colo., June 11, 2019), at *5 (citing *Se. Promotions, Ltd. v. Conrad*, 420 U.S. 546, 554 (1975)).

Plaintiff has not even pled, let alone proven, the elements of a valid prior restraint claim. He does not allege that he planned to engage in any protected speech after the July 16 meeting; he does not allege that he was required to apply for approval to engage in such speech; and he does not allege that such approval was denied by the Department. (Doc. # 26). Further, he offers no evidence to suggest that Defendants' motivation for firing him was to prevent him from exercising his First-Amendment rights. Rather, he merely makes the conclusory allegation that "Defendants did not provide, and cannot provide, any reason for the termination of [Plaintiff's] employment, other

10

than that such termination was in retaliation for [Plaintiff's] future speech and association." (Doc. # 26, ¶. 129). To overcome a motion for summary judgment, a plaintiff must do more than simply rest upon pleadings and unsupported allegations: he must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). Plaintiff has failed to do so here. Therefore, Plaintiff's prior-restraint claim must fail as matter of law.

## IV.  CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment (Doc. # 57) is GRANTED. The clerk is directed to enter judgment in favor of Defendants and against Plaintiff on all claims asserted in this case.

DATED: March 29, 2021

BY THE COURT:

CHRISTINE M. ARGUELLO
United States District Judge